IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **PROVIZOR FEDERAL, INC.,** *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No.: 1:24-cv-1535-SAG |
| **LOYAL SOURCE GOVERNMENT SERVICES, LLC,** | * | |
| Defendant. | * | |

* * * * * * * * * *

## MEMORANDUM OPINION

This action results from an adversary proceeding, Adv. No. 24-00082 (the "Proceeding"), related to Chapter 11 bankruptcy proceedings before the United States Bankruptcy Court for the District of Maryland ("Bankruptcy Court"). Defendant Loyal Source Government Services, LLC ("Defendant" or "Loyal Source") seeks a withdrawal of reference of the Proceeding pursuant to 28 U.S.C. § 157(d). Adv. No. 24-00082, ECF 5. Plaintiff KORE Capital Corporation ("Kore") opposes the motion, Adv. No. 24-00082, ECF 17, and Morgan W. Fisher, Chapter 7 Trustee for Provizor Federal, Inc. (the "Trustee"), joined in the opposition, Adv. No. 24-00082, ECF 18. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023); Fed. R. Bankr. P. 8019(b)(3). For the reasons explained below, Loyal Source's motion to withdraw the reference is **DENIED**.

I.  **BACKGROUND**

The following background presents only those facts relevant to the pending motion. This dispute originates from the failure of Provizor Federal, Inc. f/k/a OMV Medical ("OMV" or "Provizor") to make timely payments to Loyal Source in accordance with a 2018 government subcontract. Adv. No. 24-00082, ECF 5 at 2. Through arbitration in 2023, Loyal Source

demonstrated entitlement to over $8.6 million for past due amounts from Provizor and secured a constructive trust for future amounts due under the 2018 subcontract. *Id*. at 2-3. On January 29, 2024, Loyal Source secured confirmation of the arbitration awards and the constructive trust from this Court. *Loyal Source Gov't Servs., LLC v. OMV Medical Inc., N/K/A Provizor Fed., Inc.*, Case No. 23-cv-02889, ECF 53. This Court entered a final judgment and order in favor of Loyal Source in the amount of $11.9 million and imposed a constructive trust "on any payments OMV received from the Government on or after January 5, 2024, under the October 23, 2017 Prime Contract between the Government and OMV, for services provided by Loyal Source to OMV, pursuant to the [2018 subcontract]." *Id.* at 2. However, pursuant to a 2021 credit and security agreement, Kore had extended credit to Provizor in exchange for a security interest in Provizor's assets and accounts receivable. *Id*. On February 12, 2024, proposed-intervenor Kore moved to alter or amend this Court's Order and Judgment, asserting that Kore has a first priority perfected security interests in assets subject to the constructive trust pursuant to the 2021 credit and security agreement between Provizor and Kore. Case No. 23-cv-2889, ECF 61, 62.

On February 26, 2024, Provizor filed a voluntary Chapter 11 bankruptcy petition and filed motions seeking, among other forms of relief, authorization to obtain post-petition financing and to use cash collateral to fund its operations during the pendency of its Chapter 11 case. *See In re Provizor Fed., Inc.*, Bankr. Case No. 24-11528, ECF No. 10.[1] In its debtor-in-possession ("DIP") motion, Provizor asked the Bankruptcy Court to pledge all of its assets, including those subject to

---

[1] Under 11 U.S.C. § 362, Provizor's bankruptcy petition automatically stayed all matters pending in Case No. 23-cv-2889. *Loyal Source Gov't Servs., LLC v. OMV Medical Inc., N/K/A Provizor Fed., Inc.*, Case No. 1:23-cv-02889, ECF 117 (May 16, 2024). That case remains stayed following the Bankruptcy Court's order denying Loyal Source's motion for relief from the automatic stay, *In re Provizor Fed., Inc.*, Bankr. Case No. 24-11528, ECF 302 (July 19, 2024).

the constructive trust, to Kore so that Kore could provide Provizor with continued liquidity under the parties' 2021 credit and security agreement. *Id*. Loyal Source filed its objections to the Provizor's proposed use of funds, arguing that funds subject to the constructive trust are not property of the Provizor's estate pursuant to 11 U.S.C. § 541(d), and cannot serve as cash collateral nor be pledged to Kore. Bankr. Case No. 24-11528, ECF No. 20. On March 12, 2024, the Bankruptcy Court held a continued hearing on Provizor's motions, at which it overruled Loyal Source's objections, granted Provizor's DIP motion on a further interim basis ("Second Interim Order"), and imposed certain protections for Loyal Source. Bankr. Case No. 24-11528, ECF 79-2.

On April 5, 2024, Kore and Provizor commenced the Proceeding seeking determination as to the validity, priority, and extent of the interests that Kore and Loyal Source have in Provizor's assets, including Provizor's receivables collected since the bankruptcy filing and vis-à-vis the constructive trust imposed by this Court. Compl., Adv. No. 24-00082, ECF 1. On May 1, 2024, Loyal Source filed a motion for permissive withdrawal of the reference of the adversary proceeding pursuant to 28 U.S.C. § 157(d). Adv. No. 24-00082, ECF 5. Kore opposed the motion to withdraw, Adv. No. 24-00082, ECF 17, and the Trustee joined in the opposition, Adv. No. 24-00082, ECF 18. Loyal Source did not reply. Accordingly, the motion to withdraw is ripe.

## II.     LEGAL STANDARD

28 U.S.C. § 157(d) provides in pertinent part that a district court, in its discretion, "may withdraw, in whole or in part, any case or proceeding referred under this section . . . on timely motion of any party, for cause shown." "The district court has broad discretion in deciding whether reference could be withdrawn for cause shown." *In re Millenium Studios, Inc.*, 286 B.R. 300, 303 (D. Md. 2022) (internal quotation marks and citation omitted). In determining whether cause exists, a district court should first consider "whether the matter at issue between the parties is 'core'

within the meaning of § 157(b)(2) of the Bankruptcy Code." *Id*. (citation omitted). Additional factors to consider include the uniformity of bankruptcy administration, forum shopping and confusion of fora, conservation of creditor and debtor resources, expediency of the bankruptcy proceeding, and the fact that equitable issues are posed not requiring a jury trial. *In re EquiMed, Inc.*, 259 B.R. 269, 273 (D. Md. 2001). As the movant, Loyal Source has the burden to show cause for the permissive withdrawal of reference of the Proceeding. *In re Millenium Studios, Inc.*, 286 B.R. at 303.

28 U.S.C. § 157(b)(2) provides an illustrative, but non-exhaustive, list of examples of what constitute core proceedings, including: matters concerning the administration of the estate; determinations of the validity, extent, or priority of liens; preference actions; counterclaims by the estate against persons filing claims against the estate; and other proceedings affecting the liquidation of the assets of the estate.[2] The Fourth Circuit Court of Appeals provided its view of the core/non-core distinction:

> The distinction between what is "core" and what is "non-core" is far from clear. On the one hand, a broad reading of the literal terms of the statutory text could lead to the result that courts treat just about every dispute as "core." But, the statute must be interpreted keeping in mind (1) that Congress passed it in response to the defects revealed by *Northern Pipeline* [458 U.S. 50 (1982) (in which the Court decried the allowance of non-Article III bankruptcy courts to hear claims based upon state-created private rights that arose independent from and antecedent to the bankruptcy proceedings and involved strangers to the bankruptcy action)], and (2) that *Northern Pipeline* remains good law, even if perhaps narrowed by subsequent decisions.

*In re Apex Express Corp.*, 190 F.3d 624, 631 (4th Cir. 1999). The Fourth Circuit in *In re Apex* considered the question of whether certain "accounts receivable" claims against strangers to a

---

[2] The term "preference" refers to a pre-petition transfer made by a debtor to a creditor that increased the creditor's recovery in comparison to the recovery by other similarly situated creditors. *See* 11 U.S.C. § 547.

bankruptcy based on pre-petition contract-based rights could be considered core. *Id*. It concluded that "[w]e think …such claims, at least when grounded in state law and arising pre-petition, must be treated as non-core." *Id*. The court reasoned: "such claims fall squarely under the dictates of *Northern Pipeline* [that] Congress may not force non-consenting claimants whose claims are based on state-created private rights into non-Article III courts." *Id.* at 632. Thus, "the core/non-core distinction should depend upon the connection the claim has to [a] public right." *Id.* If the dispute at issue "only has some theoretical and indirect impact on the public act of debt restructuring" but is otherwise "entirely separate and entirely private [such as] the contract-based liability between two private parties," then the court must treat such a dispute as a non-core matter. *Id.* In short, "the relevant inquiry for whether a claim arises in a bankruptcy proceeding is whether it would have any existence outside of the bankruptcy." *In re Lloyd E. Mitchell, Inc.*, Civ. No. AMD 07-1622, 2008 WL 11518428, at *9 (D. Md. Mar. 10, 2008) (internal quotation marks omitted).

**III. DISCUSSION**

Loyal Source seeks to have this Court hear the Proceeding rather than the Bankruptcy Court. Loyal Source contends that the disputes between it and Kore are "grounded in state law," "derived from pre-petition contracts and other relationships," and are "at most non-core issues." Adv. No. 24-00082, ECF 5 at 9. Loyal Source specifically contends that a Debtor's property interest is determined by Maryland state law, the constructive trust was established pre-petition, and the material issues are "non-core" because the dispute "could have been brought whether or not the [Debtor] filed for bankruptcy." *Id*. at 10–11 (quoting *PNC Bank N.A. v. Davis*, Civ. No. JKB-21-01367, 2021 WL 5395990, at *4 (D. Md. Nov. 18, 2021)). Loyal Source also contends that the remaining factors weigh in favor of withdrawing the reference, including that a bankruptcy

court order would be ultimately subject to *de novo* review by a district court, jeopardizing the efficiency of the Proceeding. *Id.* at 11.

For its part, Kore (joined by the Trustee, Adv. No. 24-00082, ECF 18) argues that the Proceeding is "clearly a 'core' proceeding" because it "would have no practical existence *but for* the bankruptcy." Adv. No. 24-00082, ECF 17 at 4-5 (quoting *Albert v. Site Mgmt. Inc.*, 506 B.R. 453, 456 (D. Md. 2014) (emphasis provided)); *see also Stern v. Marshall*, 564 U.S. 462, 476 (2011) ("Core proceedings are those that arise in a bankruptcy case or under Title 11 [of the Bankruptcy Code]."). Kore explains that determinations of lien priorities and preference actions are the types of proceeding specifically enumerated in 28 U.S.C. § 157(b), both of which must be decided by the bankruptcy court. Adv. No. 24-00082, ECF 17 at 5. Kore also contends that Loyal Source would have to, at a minimum, obtain stay relief with respect to the constructive trust funds, which is another type of core proceeding under § 157(b)(2)(G). *Id*. Kore further rebuts Loyal Source's reliance on state law, conceding that both parties' claims have "state-law origins," but are ultimately "irrelevant to the federal law issue of how those claims are satisfied in the context of a bankruptcy." *Id*.

Under the Fourth Circuit's framework, it appears that the Proceeding is a non-core matter. The parties agree that the controversy at issue (who has a superior lien and property interest in funds Provizor received from the federal government pre-petition) arises from state property law. Adv. No. 24-00082, ECF 5 at 9; ECF 17 at 5. And this dispute, although it has implications for Provizor's bankruptcy estate, originated pre-petition: Kore asserts its interests based on the 2021 credit agreement, Adv. No. 24-00082, ECF 17 at 1-2, and Loyal Source asserts its interests based on the October, 2023 and November, 2023 arbitration awards and this Court's January, 2024 order imposing a constructive trust in its favor, Adv. No. 24-00082, ECF 5 at 4, 10. That the disputed

6

funds ultimately became subject to the Bankruptcy Court's Second Interim Order certainly implicates bankruptcy matters, but shows that the underlying dispute has more of an indirect impact on the bankruptcy proceeding and could have been litigated regardless of Provizor's bankruptcy. *See In re Apex Express Corp.*, 190 F.3d 624, 632-33 (4th Cir. 1999). Indeed, that Kore and Loyal Source filed competing motions to amend this Court's order and judgment before Provizor declared bankruptcy also weighs in favor of finding this a non-core matter. Case No. 23-cv-2889, ECF 62; ECF 91.

Despite finding the Proceeding to be a non-core matter, this Court, exercising its discretionary authority under § 157(d), finds cause lacking to withdraw the reference. There is "significant value" in having the Bankruptcy Court preside over non-core matters, especially where, as here, the proceeding is related to the bankruptcy action, and the uniformity of bankruptcy administration, conservation of creditor and debtor resources, and the expediency of the bankruptcy proceeding weigh against the finding cause for withdrawal. *In re El-Atari*, No. 1:11-cv-1090, 2011 WL 5828013, at *5 (E.D. Va. Nov. 18, 2011). The Bankruptcy Court is most familiar with the issues presented in Kore's complaint, and, since Provizor's petition, it has received evidence and heard testimony in no less than three separate hearings on issues affecting Kore's claims in the bankruptcy proceeding. *See* Bankr. Case No. 24-11528; *see also In re Erickson Ret. Cmtys., LLC*, No. WDQ-11-3736, 2012 WL 1999493, at *3-*4 (D. Md. June 1, 2012) ("Uniformity of administration is achieved when Bankruptcy Courts handle… matters with factual and legal issues in common with the bankruptcy action"). Although this Court may ultimately review the issues following the Bankruptcy Court hearing, Loyal Source has not met its burden of showing that withdrawal would promote judicial economy and economic use of the parties' resources. *See In re EquiMed, Inc.*, 259 B.R. 269, 273 (D. Md. 2001) (administration of

debtor's bankruptcy estate would be better served and economic use of both debtor's and creditor's resources would be fostered if bankruptcy court resolved parties' conflicting claims to property at issue). A pretrial conference in the Proceeding is currently set in the Bankruptcy Court for late September. Adv. No. 24-00082, ECF 26. In contrast, this Court's trial calendar, for the purposes of scheduling Court hearings, is full through Fall 2025. Thus, keeping the Proceeding in the Bankruptcy Court promotes considerations of efficiency and expediency.

Under § 157(c), the Bankruptcy Court may "hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," and, after overseeing discovery and taking evidence, "submit proposed findings of fact and conclusions of law" for this Court to consider before entering a final judgment. *See In re Erickson*, 2012 WL 1999493, at *3-*4; *Albert v. Site Mgmt., Inc.*, 506 B.R. 453, 459-460, 459 n.3 (D. Md. 2014); *In re El-Atari*, 2011 WL 5828013, at *6 & n.9. Therefore, this Court finds that applying all relevant factors favors keeping the Proceeding in the Bankruptcy Court to follow that procedure.

## IV.  CONCLUSION

For the reasons stated above, Loyal Source's motion to withdraw the reference is denied. A separate Order follows.

Dated: August 27, 2024                                   /s/
                                                  Stephanie A. Gallagher
                                                  United States District Judge